UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

BRANDY LEE ARREGUIN,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

No. 1:25-cv-00543-KES-GSA

**FINDINGS AND RECOMMENDATIONS TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, TO GRANT DEFENDANT'S CROSS MOTION, AND TO DIRECT ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF**

**(Docs. 15, 19)**

## I. Introduction

Plaintiff Brandy Lee Arreguin seeks judicial review of a final decision of Defendant Commissioner of Social Security denying her application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is before the undersigned for issuance of Findings and Recommendations based on the parties' briefs. After reviewing the record the undersigned finds that substantial evidence and applicable law support the ALJ's decision and recommends that the Court direct entry of judgment in favor of Defendant and against Plaintiff.

## II. Factual and Procedural Background

Plaintiff filed an application for supplemental security income on September 8, 2022. AR 38, 245. The claim was denied initially on November 21, 2022, and on reconsideration on April 13, 2023. AR 90–99. The ALJ held a hearing on April 17, 2024. AR 32–61. On May 8, 2024, the ALJ issued an unfavorable decision. AR 17–26. After the Appeals Council denied review on March 25, 2025 (AR 1–6), Plaintiff appealed to this Court.

## III. Standard of Review

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the

Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).

Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

**IV.** **<u>Evaluating a Claimant's Alleged Disability</u>**

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.
>
> 42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a

dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education, and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

Finally, errors in Social Security disability determinations are subject to harmless error analysis. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014); Ludwig v. Astrue, 681 F.3d 1047, 1054 (9th Cir. 2012). "An error is harmless if it is 'inconsequential to the ultimate nondisability determination' . . . or 'if the agency's path may be reasonably discerned,' even if the agency 'explains its decision with less than ideal clarity[.]" Treichler, 775 F.3d at 1099 (citation omitted).

## V. The ALJ's Decision

At step one, the ALJ found that the claimant had not engaged in substantial gainful activity since September 8, 2022, the application date. AR 19–20.

At step two, the ALJ found that the claimant had the following severe medically determinable impairments: history of myocardial infarction, status-post pacemaker implantation, and chronic heart failure. AR 19. The ALJ also found that Plaintiff had the following non-severe medically determinable impairments: asthma, iron deficiency anemia, and adjustment disorder with mixed emotional features of depression and anxiety. Id.

At step three, the ALJ found that the claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed

impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform light work as defined in 20 CFR 416.967(b), with the following limitations:

> she can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. She can never climb ladders, ropes, or scaffolds. She must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, as well as hazards. She can understand, remember, and carry out simple work instructions.

AR 22.

At step four, the ALJ found that the claimant was capable of performing her past relevant work as an informal waitress as actually performed, and housekeeping cleaner as generally and actually performed as that work does not require the performance of work-related activities precluded by the Claimant's residual functional capacity. AR 24.

At step five, in the alternative and in reliance on the VE's testimony, the ALJ concluded that Plaintiff could perform other jobs existing in significant numbers in the national economy, namely: Cashier II, Sales Attendant and Cafeteria Attendant. AR 25.

Accordingly, the ALJ concluded that Plaintiff was not disabled at any time since the application date of September 8, 2022. AR 26.

## VI. Issue Presented

Plaintiff asserts two claims of error.

First, Plaintiff contends that "The ALJ's RFC determination was not supported by substantial evidence because she failed to develop the record with missing records and an adequate medical opinion." MSJ at 3, ECF No. 15.

Second, Plaintiff contends that "The ALJ failed to adequately evaluate Plaintiff's subjective reports of symptoms in accordance with 20 C.F.R. §416.929, Ninth Circuit precedent, and the substantial evidence standard." Id.

A. **Claim I (Duty to Develop the Record)**

1. **Applicable Law**

a. **RFC, Generally**

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity (RFC). *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

b. **Duty to Develop the Record**

"In Social Security cases the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." Smolen v. Chater, 80 F.3d at 1288 (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)); see also Howard ex rel. Wolff

v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) ("In making a determination of disability, the ALJ must develop the record and interpret the medical evidence.") (citation omitted); However, the ALJ's duty to conduct an appropriate inquiry is triggered only when there is "[a]mbiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence." Tonapetyan, 242 F.3d at 1150 (citations omitted). When triggered, the ALJ "may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." Id. (citations omitted).

A specific finding of ambiguity or inadequacy in the record is not required to trigger the necessity to further develop the record where the record itself establishes the ambiguity or inadequacy. McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2011); Garcia v. Comm'r of Soc. *Sec.*, No. 1:19-CV-00545-SAB, 2020 WL 1904826, at *13 (E.D. Cal. Apr. 17, 2020).

The ALJ is not permitted to fill the evidentiary gaps of the record by rendering a medical judgment and interjecting his own medical opinion to develop the RFC. See Tackett v. Apfel, 180 F.3d at 1102. "As a layperson, an ALJ is not qualified to extrapolate functional limitations from 'raw medical data' but may make reasonable inferences from medical evidence susceptible to a lay understanding." see Katie E. B. v. Kijakazi, No. 20CV2354-MDD, 2022 WL 4595062, at *8 (S.D. Cal. Sept. 30, 2022).

Finally, this independent duty to fully and fairly develop the record and to assure that a claimant's interests are considered extends to the represented as well as to the unrepresented claimant. Tonapetyan v Halter, 242 F.3d at 1150 (9th Cir. 2001).

**2. Analysis**

Plaintiff contends as follows:

> On Plaintiff's Disability Report in the record, she indicated that she attended physical therapy after having a heart attack. T 321-322. During a visit

to her primary care physician Dr. Hashim, she stated that she had been told by a few home care nurses that the swollen pacemaker implantation area did not look normal. T 415.

At the hearing, Plaintiff confirmed that she attended physical therapy, during which she was taught breathing techniques and leg movement. T 52, 55. She testified that a nurse came to her house twice a week to help with her physical therapy. T 55. She also testified about receiving emergency department care at Fresno Community Hospital. T 49-50. The ALJ stated, "I don't have medical records from Fresno Community so all I would have is your testimony at this point." T 50.

There was an obvious gap in the record. The Disability Report and notation in Dr. Hashim's treatment note corroborate Plaintiff's report of attending physical therapy and receiving home care after her heart attack. However, those records were not part of the record. The ALJ was aware of this gap, as she asked Plaintiff numerous questions about it during the hearing. In addition, the ALJ directly acknowledged at the hearing that she did not have Fresno Community Hospital records. This obvious gap should have triggered the ALJ's duty to develop with the missing records. See Montoya v. Kijakazi, No. 1:20-CV-0152 JLT, 2021 WL 5356470, at *5 (E.D. Cal. Nov. 17, 2021)(citing Carlon v. Saul, 2019 WL 4274091, at *12 (E.D. Cal. Sept. 9, 2019); Bernice H. v. Berryhill, 2018 WL 3862303, at *4 (D. Or. Aug. 14, 2018).

Yet, the ALJ failed to take any steps to develop the record with the missing records. She did not discuss the missing records with Plaintiff's hearing representative at the end of the hearing, subpoena the records, or leave the administrative record open for submission for records. Rather, she made her determination without even mentioning Plaintiff's physical therapy and reported additional emergency care treatment. T 22-24. This was an erroneous failure to develop, despite Plaintiff being represented at the hearing. See Caratachea v. Comm'r of Soc. Sec., No. 1:21-CV-00804-DAD-BAM, 2025 WL 1548682, at * 3-4 (E.D. Cal. May 30, 2025)(collecting cases); see also Craig H. v. Kijakazi, No. 22-CV-00800-AJB(LR), 2023 WL 4679342, at *8 (S.D. Cal. July 21, 2023) report and recommendation adopted, No. 22-CV00800-AJB-LR, 2023 WL 5340794 (S.D. Cal. Aug. 18, 2023) (finding that an obvious gap in the record should have alerted the ALJ to the fact that plaintiff's mental health treatment records were missing). "Merely asking Plaintiff to describe [her] [treatment] [did] not satisfy the ALJ's duty to conduct an appropriate inquiry and develop the record fully and fairly." Michael K. v. Saul, No. 1:18-CV-03165-MKD, 2019 WL 7819554, at *7 (E.D. Wash. July 31, 2019) (finding that where there is an obvious gap in the medical evidence, the ALJ has an independent duty to fully and fairly develop the record, even where the claimant is represented by counsel)

The ALJ's failure to develop the record with the missing records was not harmless because the ALJ relied on lack of evidence in the record in reaching her determination. She rejected Plaintiff's overall subjective reports of symptoms because they were "not entirely consistent with the medical evidence" in the record. T 22, 23. She next rejected Plaintiff's reported need for a wheelchair or cane for ambulation based on a November 2023 record, which is long after the timeframe that Plaintiff testified about needing them. T 23. She then rejected Plaintiff's specific complaints of medication side effects and left

> arm difficulty because they were not noted in the medical record. T 23-24. Given that missing records specifically pertained to Plaintiff's mobility after her heart attack and subsequent emergency room care, the ALJ's findings could not be supported by substantial evidence. See Caratachea, 2025 WL 1548682, at * 4 (concluding the ALJ's findings could not have been based on the medical evidence "as a whole" because the record was missing mental health records); Montoya, 2021 WL 5356470, at *6 (citing Annette S. v. Saul, 2019 WL 13039945, at *6 (C.D. Cal. Aug. 20, 2019)(explaining an ALJ must consider missing medical records "for a full and fair review," and an "RFC assessment based on the incomplete record is not supported by 'substantial evidence'")). Remand is warranted for development of the missing records."
>
> MSJ at 12–15, ECF No. 15.
>
> Defendant responds as follows:
>
> Prior to Plaintiff's hearing, she submitted a brief by her representative to the ALJ (AR 361-62). The representative argued that Plaintiff's medical condition precluded "any type of work" (AR 362). Notably, he did not argue—or even suggest or imply—that the record was incomplete (AR 361-62). At the outset of the hearing, the ALJ asked Plaintiff's counsel if he had had the opportunity to review the record, and he answered that he had (AR 34). The ALJ asked whether he had any objections, and he said that he did not. The ALJ then entered into evidence all the exhibits of record and said to counsel that his office had advised that the record was complete (AR 35). Counsel agreed, stating, "Yes, Your Honor, to the best of my knowledge."
>
> ECF No. 19 at 4
>
> Defendant further responds:
>
> Because Plaintiff never alleged that the record was not complete during administrative proceedings, she forfeited this issue. See, e.g., Shaibi v. Berryhill, 883 F.3d 1102, 1109 (9th Cir. 2018) (counsel's failure to raise an issue in the administrative proceedings results in "the claimant forfeit[ing] such a challenge on appeal"); King v. Comm'r, 2024 WL 1257331, *7 (E.D. Cal. March 25, 2024) (a plaintiff waived an argument that a consultative examination was required where counsel "fail[ed] to raise the issue before the ALJ or the Appeals Council"). And even if she did not, she does not and cannot show that the record before the ALJ was inadequate for the evaluation required under 20 C.F.R. § 416.912. See Ludwig, 681 F.3d at 1055 n.30.
>
> ECF No. 19 at 6

The Undersigned will address the issue of forfeiture below, but first, as to Plaintiff contention that the ALJ "did not discuss the missing records with Plaintiff's hearing

representative at the end of the hearing, subpoena the records, or leave the administrative record open for submission for records. Rather, she made her determination without even mentioning Plaintiff's physical therapy and reported additional emergency care treatment," to the contrary, the ALJ did mention the physical therapy records. As quoted above in Plaintiff's argument, "The ALJ was aware of this gap, as she asked Plaintiff numerous questions about it during the hearing. In addition, the ALJ directly acknowledged at the hearing that she did not have Fresno Community Hospital records." MSJ at 13 (emphasis added).

Importantly however: 1- Plaintiff never alleged that the record was incomplete during the administrative proceedings, and 2- the ALJ did not prohibit the later submission of records. Plaintiff does not contend that she attempted to submit the missing records but that her attempt was rejected by the ALJ, or that she offered to obtain them and submit them at a later time. Thus, Plaintiff did not fulfill her primary responsibility to obtain and submit the missing records. As SSR 17-4 provides, "Although we take a role in developing the evidentiary record in disability claims, claimants and their appointed representatives have the primary responsibility under the Act to provide evidence in support of their disability or blindness claims." See, also. Bowen v. Yuckert, 482 U.S. 137, 146 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.").

Plaintiff also explains that because these "missing records specifically pertained to Plaintiff's mobility after her heart attack and subsequent emergency room care, the ALJ's findings could not be supported by substantial evidence." MSJ at 15 (emphasis added).

First, the fact that they "pertained" to her mobility does not establish a lack of mobility, nor has Plaintiff produced the records or explained how her heart attack and subsequent emergency room care affected her functionality. In addition, as Plaintiff's points out, the ALJ

" found that Plaintiff suffers from the severe impairments of history of myocardial infarction, status-post pacemaker implantation, and chronic heart failure. T 19." MSJ at 10. Hence, the ALJ was aware of Plaintiff's heart condition when formulating Plaintiff's RFC.

Secondly, as Defendant points out, "In determining Plaintiff's RFC, the ALJ considered not only the prior administrative medical findings (PAMFs) of State agency medical consultants E. Trias, M.D., whose PAMFs the ALJ properly found only somewhat persuasive, and G. Leu, M.D., whose PAMFs the ALJ properly found persuasive, but also Plaintiff's testimony… and the medical evidence of record." ECF No.19 at 6 &7. Thus, the ALJ did consider the records she had before her.

Finally, and again, the impetus was on Plaintiff (or her Counsel) to provide the records they claim were missing, or at least describe their contents and significance.

Thus, even assuming for the moment that error was committed by the ALJ, errors in Social Security disability determinations are subject to harmless error analysis. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014); Ludwig v. Astrue, 681 F.3d 1047, 1054 (9th Cir. 2012). "An error is harmless if it is 'inconsequential to the ultimate nondisability determination' . . . or 'if the agency's path may be reasonably discerned,' even if the agency 'explains its decision with less than ideal clarity[.]" Treichler, 775 F.3d at 1099 (citation omitted); See Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("A decision of the ALJ will not be reversed for errors that are harmless"). Up to this point, Plaintiff has not demonstrated that the ALJ committed any more than harmless error.

Next, Plaintiff explains that "Both Dr. Leu's and Dr. Trias's opinions were based on an incomplete and inadequate record. As argued earlier, there was an obvious gap in the record due

to missing records for physical therapy, home care, and Fresno Community Hospital emergency room treatment. See supra. Moreover, neither physician had the opportunity to review subsequent medical records and objective findings that were substantially inconsistent with their opinions." MSJ at 17 . Some of the records Plaintiff describes as being unreviewed by the state agency consultants follow:

> Pacemaker interrogation reports conducted in 2023 show changes in thoracic impedance levels (ohms) and OptiVol2.0 fluid index in comparison to the 2022 interrogation reports. T 598, 638-639. These metrics are used to monitor changes in fluid accumulation in the setting of congested heart failure, predict future heart failure events, and provide the possibility of intervention to prevent such events. See W.H. Wilson Tang et al., "Measuring impedance in congestive heart failure: Current options and clinical applications", 157 Am Heart J. 402–411 (2016), available at https://pmc.ncbi.nlm.nih.gov/articles/PMC3058607/ (last visited Sept. 22, 2025). Notably, the 2023 interrogation reports noted that Plaintiff had only 4 hours of daily activity per day, meaning there was no change in activity that could possibly explain the change in the thoracic impedance and OptiVol2.0 results. T 467, 585, 596, 633.
>
> An electrocardiogram conducted in September 2023 revealed marked sinus bradycardia with 47 bpm and low voltage QRS. T 610, 612. This is a stark difference from October 2022 electrocardiogram findings which merely showed sinus bradycardia with 51 bpm and nonspecific T wave abnormality. T 584. Low voltage QRS findings on an electrocardiogram have been deemed markers of severity of heart failure and risk factors for adverse outcomes in patients with systolic heart failure and other cardiovascular issues. See Xiaofei Li, MD, PhD et al., "Prevalence and Clinical Significance of Low QRS Voltages in Patients Presenting for Cardiovascular or Related Diseases", 123 Am. Med. J. 961-969 (2025), available at https://www.amjmed.com/article/S0002-9343(25)00062-2/fulltext (last visited Sept. 23, 2025); see also Sandeep M. Kamath M.D. et al., "Low voltage on the electrocardiogram is a marker of disease severity and a risk factor for adverse outcomes in patients with heart failure due to systolic dysfunction.", 152 Am Heart J. 355-361 (2006).
>
> A cardiac echocardiogram dated April 10, 2023 revealed right ventricular systolic pressure estimated at 32.10 mmHg. T 595. In contrast, an earlier echocardiogram from November 2022 showed lower right ventricular systolic pressure estimated at 29.90 mmHg. T 587. Estimated right ventricular systolic pressures of more than 30 mm Hg are associated with negative clinical outcomes such as higher risk of mortality. See Manreet K. Kanwar, MD et al., "Elevated Pulmonary Pressure Noted on Echocardiogram: A Simplified Approach to Next Steps", 7 Am Heart J. e017684 (2021), available at https://www.ahajournals.org/doi/full/10.1161/JAHA.120.017684 (last visited Sept. 22, 2025)
>
> MSJ at 18–19.

But again, as Defendant explains:

> "In determining Plaintiff's RFC, the ALJ considered not only the prior administrative medical findings (PAMFs) of State agency medical consultants E. Trias, M.D., whose PAMFs the ALJ properly found only somewhat persuasive, and G. Leu, M.D., whose PAMFs the ALJ properly found persuasive, but also Plaintiff's testimony (which, again, the ALJ properly discounted, as Defendant explains below) and the medical evidence of record (see AR 19-24). See 20 C.F.R. §§ 416.920c (on evaluating the persuasiveness of medical opinions and PAMFs), 416.945(a)(1) (RFC is the most that a claimant can still do despite her limitations; ALJs assess RFC "based on all the relevant evidence in the case record"); see also id. § 416.913a(a)(1) (a State agency medical consultant makes PAMFs based on the evidence in the case record). Notably, the ALJ did not adopt either Dr. Trias's or Dr. Leu's PAMFs; rather, their PAMFs informed the RFC determination to the extent that they were persuasive and in light of the record evidence, including the subsequent medical records cited by Plaintiff (see AR 19-24 (citing, inter alia, AR 595, 607-10, 619-21, 624, 626-28, 648-51, 659); Dkt. 15 at 17-19 (citing, inter alia, AR 594-661)."
>
> ECF Doc 19 pgs 6 & 7

Here, the lack of a medical opinion in itself does not create ambiguity or inadequacy because the RFC is not a medical opinion and need not mirror one. See 20 C.F.R. § 416.927(d)(2) ("the final responsibility for deciding [RFC] is reserved to the Commissioner"); "ALJs need not seek the opinion of a medical expert every time they review new medical evidence and make a RFC determination." Bufkin v. Saul, 836 F. App'x 578, 579 (9th Cir. 2021). There is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question. Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012). Further, "The decision to purchase a consultative examination will be made on an individual case basis," not that it will be purchased in every case. 20 C.F.R. 404.1519.

Plaintiff not only had the opportunity, but certainly the incentive, to obtain either a medical opinion from her own providers prior to the administrative hearing or at least request during the administrative hearing that the ALJ obtain a consultative medical opinion. But Plaintiff did not argue, suggest, or imply that the record was incomplete. The following

exchange at the hearing demonstrates this:

ALJ: And Mr. Issagholian, your office has advised that the record is complete?

ATTY: Yes, your honor, to the best of my knowledge.

AR 35.

Given this acknowledgement by Plaintiff's hearing Counsel, there is at least an argument that Plaintiff forfeited this issue on appeal. In Meanel v. Apfel, the Ninth Circuit made clear that, "at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal in federal court." 172 F.3d 1111, 1115 (9th Cir. 1999), as amended (June 22, 1999). In citing Meanel, the Court in Redmond stated, "Courts in this circuit have applied Meanel in a variety of factual contexts, including the waiver of an argument that the mental health record should have been developed further by the ALJ." Redmond v. Berryhill, No. 17-cv-01603-DMR, 2018 U.S. Dist. LEXIS 110473, at 38-39 (N.D. Cal. July 2, 2018) (citing Johnson v. Colvin, No. ED CV 15-02239 AFM, 2016 U.S. Dist. LEXIS 105194, 2016 WL 4208434, at *3 (C.D. Cal. Aug. 8, 2016) (relying on Meanel, and holding that "neither Plaintiff nor his counsel suggested that the ALJ . . . should send Plaintiff to a mental evaluation, or should further develop the record in any other way. As such, Plaintiff waived any arguments on [this issue].").

However, since Plaintiff has not established that the ALJ committed harmful error as to this claim, the Undersigned finds no need to further address the issue of forfeiture.

### B. Claim II (Subjective Complaints)

#### 1. Applicable Law

An ALJ performs a two-step analysis to determine whether a Plaintiff's testimony regarding subjective pain or symptoms is credible. See Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014); Smolen, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the claimant must produce

objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. Garrison, 759 F.3d at 1014; Smolen, 80 F.3d at 1281–82. If the claimant satisfies the first step and the ALJ finds that there is no evidence of malingering in the record, the ALJ must then evaluate the intensity, persistence and limiting effects of the claimant's symptoms to determine the extent to which those symptoms limit the individual's ability to perform work-related activities. S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014); see also S.S.R. 16-3p at *10. Subjective testimony cannot be rejected on the sole ground that the testimony is not entirely corroborated by the objective medical evidence in the record. Nevertheless, the medical evidence is still a relevant factor in determining the severity of Claimant's pain and its disabling effects. See, *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

In addition, other factors considered are: 1- daily activities; 2- the location, duration, frequency, and intensity of pain or other symptoms; 3- any applicable precipitating and aggravating factors; 4- the type, dosage, effectiveness, and side effects of any prescribed medication; 5- treatment other than medications that the claimant receives; 6- any other measures the claimant uses to relieve pain or other symptom; and 7- other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. See, 20 C.F.R. § 416.929(c)(3).

**2. Analysis**

To begin, the ALJ found "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely

consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Because the ALJ found no malingering, the ALJ was required to identify clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's symptom testimony.

The ALJ summarized some of the relevant testimony as follows:

> The claimant alleged disability due to heart attack, having died for 4 minutes, needing help showering, being unable to cook or clean, inability to lift left arm too far due to a pacemaker, heart attack, and seizure (Exhibit 6E). She reported being right-handed and having purchased a wheelchair and a cane (Id.). The claimant's last seizure was on June 15, 2022 (Exhibit 5E, p. 3)
>
> AR 22

Plaintiff argues:

> . . . [the ALJ] merely summarized the medical evidence of record, and concluded Plaintiff's reported need for a cane or wheelchair was unsupported. T 23. She lastly stated that Plaintiff's subjective complaints of medication side effects and left arm difficulty were also not credible because they were not noted in the medical record. T 23-24.
>
> These reasons proffered by the ALJ are based on the same exact concept: a lack of medical evidence to fully corroborate Plaintiff's subjective complaints. As explained by Social Security's own regulations and district courts in the Ninth Circuit, that singular, conclusory basis was insufficient. 20 C.F.R. §416.929; Burch, 400 F.3d at 680; Robert William L., 2021 WL 1890795, at *9.
>
> The ALJ's summary of the medical evidence was equally insufficient. A summary of medical evidence in support of the RFC determination is not the same as providing clear and convincing reasons for rejecting subjective complaints of symptoms. Brown-Hunter v. Colvin, 806 F.3d 487, 494 (9th Cir. 2015)("To ensure that our review of the ALJ's credibility determination is meaningful, and that the claimant's testimony is not rejected arbitrarily, we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination."). That the ALJ recounted evidence is not the same as evaluating that evidence, or comparing that evidence to Plaintiff's statements. See Senesac v. Comm'r of Soc. Sec. Admin., No. CV-23-00549-PHX-JJT, 2024 WL 1251984, at *3 (D. Ariz. Mar. 25, 2024)("The ALJ erred by not specifying the portions of Plaintiff's testimony that were inconsistent with the medical evidence. With one exception, the ALJ merely summarized Plaintiff's testimony about her symptoms and then summarized the medical evidence without making any express connection between the two.").
>
> The ALJ's error was far from harmless. As noted earlier, the ALJ relied upon the lack of evidence to reject Plaintiff's subjective complaints despite the

> obvious gaps in the record. See supra. Had the ALJ conducted her credibly analysis after fairly and fully developing the record with missing records and an adequate opinion, the RFC determination likely would have changed. Notably, had any credibility been given to pacemaker interrogation reports, Plaintiff would have been limited to performing less than 8 hours of standing, walking, and/or sitting, resulting in a finding of no jobs in a national economy.

MSJ at 22–23.

Defendant responds:

> the objective medical evidence belied Plaintiff's subjective complaints. For example, she testified that she "g[o]t really nervous, then that's where [her] anxiety kick[ed] in," and then she could not breathe (see AR 20-21, 50). But objective mental status examination findings were consistently normal (see AR 20-21, 405, 420, 621, 627). As for her subjective complaints of physical symptoms, physical examinations were normal in June and December 2022 and in November 2023 (AR 23, 592, 626-27, 659; see also AR 462, 465, 648, 651, 654, 656) .

ECF No.19 at pgs 9, 10

Here, Plaintiff does not identify the testimony in question that she claims was erroneously rejected, rather Plaintiff speaks in broad terms about the doctrine of subjective complaints and its importance. But it is Plaintiff's burden, not the Courts to identify it. See Greenwood v. Fed. Aviation Admin., 28 F.3d 971, 977 (9th Cir. 1994) ("We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim, particularly when, as here, a host of other issues are presented for review") (citation omitted).

As to Plaintiff's mental impairments, the ALJ began by stating:

> the undersigned has considered the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria.

AR 20

Then concluded:

> Because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the functional areas and the

> evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, they are nonsevere (20 CFR 416.920a(d)(1)). The undersigned finds that the claimant's mental impairments cause no functional limitations. However, the undersigned has provided for simple work instructions to address the claimant's reports of side effects from of fatigue as well as symptoms of headache.
>
> AR 21

As to Plaintiff's physical impairments the ALJ stated:

> Although there is some evidence that lends some support for the claimant's allegations, her allegations are not entirely consistent with the evidence when considering the factors in Social Security Ruling 16-3p. On June 27, 2022, a physical examination was normal (Exhibit 9F, p. 31). On September 15, 2022, it was noted that the claimant was walking 1-2 miles a day (Exhibits 3F, p. 8; 9F, p. 23). On September 29, 2022, an echocardiogram showed a normal LVEF of 55% (Exhibits 4F, p. 13; 9F, p. 22). On October 4, 2022, the medical record noted the claimant was not taking medication and she was in noncompliance. She was restarted on Lisinopril and Metoprolol XL, and she was advised to undergo labs. The claimant had a history of previous cardiac arrest and AICD implantation for secondary prevention (Exhibits 4F, p. 12; 9F, p. 21). The claimant's gait showed normal ambulation without assistance (Exhibit 9F, p. 20). On November 15, 2022, an echocardiogram showed preserved LVEF of 50-55%, AICD lead in right heart, mild mitral regurgitation, mild-to-moderate tricuspid regurgitation, and bradycardia with a heart rate of 46 bpm (Exhibit 6F, pp. 13, 9). On November 28, 2022, the claimant received emergency department treatment for chest pain. She was discharged in improved condition (Exhibit 5F, p. 24). On December 21, 2022, a physical examination was normal (Exhibit 6F, p. 14). On April 10, 2023, an echocardiogram showed a normal LVEF of 55-60% and mild mitral regurgitation/tricuspid regurgitation (Exhibit 7F, pp. 14, 2). On September 29, 2023, a physical examination was normal (Exhibit 7F, p. 15). The claimant was on aspirin therapy and on beta blocker therapy (Exhibit 7F, p. 16). The claimant had marked sinus bradycardia with a heart rate of 47 bpm (Exhibit 7F, p. 17). On November 2, 2023, a physical examination was normal (Exhibit 8F, pp. 16-17). On November 2, 2023, and November 9, 2023, the claimant's heartrate was normal at 52 bpm and 55 bpm (Exhibit 8F, pp. 16, 10). The claimant's gait, motor strength, musculoskeletal range of motion have been normal. Based on this medical evidence, the claimant's reported need for a wheelchair and/or cane for ambulation is not supported. Accordingly, the claimant's allegations are not entirely consistent with the evidence.
>
> AR 23

As to Plaintiff's argument "That the ALJ recounted evidence is not the same as evaluating that evidence, or comparing that evidence to Plaintiff's statements" (MSJ at 22-23),

the ALJ's discussion here cannot simply be dismissed as merely a factual summary. The ALJ drew reasonable inferences from uncomplicated facts in determining Plaintiff's ambulatory capacity.

Further, the record notes that in September 2022 Plaintiff reported walking one or more miles per day and her gait was normal on exam. AR 23, 462, 465. Similar findings were noted in June and October 2022 (AR 654, 656), though on February 28, 2023 she did report cane and walker use as well as a shower seat. AR 22, 278, 314. But April 2024 testimony reflects she had been walking without the cane for about a year. See AR 23, 52. She further testified that when walking one to two miles per day in September 2022, she had been using her cane yet there was no prescription for a cane. This tends to refute Plaintiff's contention of disabling standing and walking limitations. Again, the ALJ drew reasonable inferences from uncomplicated facts, and a reviewing court can do the same. Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989) (explaining that as a reviewing court, we are not deprived of our faculties for drawing inferences from the ALJ's opinion).

The ALJ also referenced that Plaintiff's treatment records noted treatment non-compliance with respect to medication and cardiology follow ups, also per her own admission at the hearing. AR 23, 53–54, 495, 649. See Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012) (ALJ can consider unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment).

In sum, the Undersigned agrees with Defendant's conclusion that " the ALJ provided sound reasons, supported by substantial evidence and legal authority, for discounting Plaintiff's subjective complaints. Here too, her alternative interpretation of the record evidence is insufficient to rebut the ALJ's reasonable and rational interpretation (see ECF No. 15 at 21-23; AR 20-24, 36-55, 265-66, 272-78, 308-15). See Consolo, 383 U.S. at 620; Ford, 950 F.3d at

1154. Plaintiff states no cause for remand as to the discounting of her subjective complaints." ECF No. 19, pg 10.

Thus, substantial evidence and applicable law support the ALJ's conclusion as to Plaintiff's second claim.

**VII. Findings and Recommendation**

For the reasons stated above, substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled. Accordingly, the recommendation is that:

1. Plaintiff's Motion for Summary Judgment, ECF No. 15, be **DENIED**
2. Defendant's Cross Motion, ECF No. 19, be **GRANTED**
3. That the Commissioner's decision be **AFFIRMED**
4. That the Clerk of Court be directed to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff.

**VIII. Objections Due Within 14 Days**

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **September 10, 2026** **/s/ Gary S. Austin**

UNITED STATES MAGISTRATE JUDGE